IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LINDA LACEY,                                    08-CV-6311-BR

        Plaintiff,                              OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

        Defendant.


MICHAEL A. HALLIDAY
Mills Jacobson Halliday P.C.
715 Commercial St. N.E.
Salem, OR  97301
(503) 585-2233

        Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053


1   -   OPINION AND ORDER

**DAVID MORADO**
Office of the General Counsel
**LEISA A. WOLF**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2545

      Attorneys for Defendant


**BROWN, Judge.**

    Plaintiff Linda Lacey seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

    Following a thorough review of the record, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.


## ADMINISTRATIVE HISTORY

    Plaintiff filed her most recent application for DIB on December 3, 2004, alleging an onset date of January 21, 1998.

Tr. 34-35, 61-69, 74.[1]  The application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on December 20, 2006.  Tr. 22.  At the hearing, Plaintiff was represented by an attorney.  Plaintiff and a vocational expert (VE) testified.  A supplemental hearing was held on February 8, 2007.  Tr. 22.  At the supplemental hearing, Plaintiff was also represented by an attorney.  Plaintiff, a medical expert (ME), and a VE testified.

The ALJ issued an opinion on March 7, 2007, in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits.  That decision became the final decision of the Commissioner on August 5, 2008, when the Appeals Council denied Plaintiff's request for review.  Tr. 8.

## BACKGROUND

Plaintiff was 54 years old at the time of the hearing. Tr. 1188.  She has an eleventh-grade education.  Tr. 1188. Plaintiff has previously worked as a cashier.  Plaintiff's date last insured was December 31, 2002.  Tr. 28.

Except when noted below, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After reviewing the

_____

[1] Citations to the official transcript of record filed by the Commissioner on February 19, 2009, are referred to as "Tr."

3   -  OPINION AND ORDER

medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 23-28.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins,* 466 F.3d at 882. The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. § 404.1520(a)(4)(i).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1520(a)(4)(iii). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must determine the claimant's residual functional capacity (RFC), which "is an assessment of the sustained, work-related physical and mental activities" that the claimant can still do "on a regular and continuing basis" despite his limitations. 20 C.F.R. § 404.1520(e). *See also* Soc. Sec. Ruling (SSR) 96-8p. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996). The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis

engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(v).  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).

## **ALJ'S FINDINGS**

At Step One, the ALJ found Plaintiff has not engaged in any

substantial gainful activity since her alleged onset date.
Tr. 23.

At Step Two, the ALJ found Plaintiff has the severe
impairments of coronary artery disease, diabetes, obesity, and
mild degenerative disc disease and the nonsevere impairments of
esophageal inflammation, gastric dysmotility, hypertension,
elevated cholesterol, and a history of epicondylitis.  Tr. 23.

At Step Three, the ALJ found Plaintiff does not have an
impairment or a combination of impairments that meets or equals a
Listing.  The ALJ assessed Plaintiff's RFC and found she can
perform a full range of sedentary work.  Tr. 24.

At Step Four, the ALJ found Plaintiff cannot perform her
past relevant work.  Tr. 28.

At Step Five, the ALJ found Plaintiff would be able to
perform jobs that exist in significant numbers in the national
economy.  Tr. 28.  The ALJ identified one example of such work
drawn from the testimony of the VE:  sedentary cashier.  Tr. 28.
Accordingly,  the ALJ concluded Plaintiff is not disabled and,
therefore, is not entitled to benefits.


## DISCUSSION

Plaintiff contends the ALJ erred by (1) failing to find a
pain-causing mental impairment at Step Two; (2) rejecting the
opinion of Plaintiff's treating physician, Steven Rogosin, M.D.;

(3) rejecting the opinion of medical source Aaron Evers, M.S., F.N.P.; (4) rejecting Plaintiff's testimony; and (5) incorrectly finding at Step Five that Plaintiff was a "younger individual" under the Medical-Vocational Guidelines.[2]

## I.   The ALJ's conclusion at Step Two that Plaintiff does not have any mental impairments.

Plaintiff contends the ALJ erred when he failed to find Plaintiff suffers from a pain-causing mental impairment at Step Two.  Plaintiff does not identify what kind of impairment this might be or point to any evidence in the record to support a finding of a pain-causing mental impairment.

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). A severe impairment "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).  *See also Ukolov*, 420 F.3d at 1003. The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R.

---

[2] Pursuant to the Medical-Vocational Guidelines, "[t]he term younger individual is used to denote an individual age 18 through 49."  20 C.F.R. part 404, subpart P, appendix 2 § 201.00(h)(1). Under the Medical-Vocational Guidelines, an individual who is 50 years old is defined as "approaching advanced age" and may be disabled as a matter of law depending on factors such as whether she is restricted to sedentary-level work or has transferrable skills.  *See* SSR 96-9p.

§§ 404.1521(a), (b).  Such abilities and aptitudes include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting.  *Id.*

The Step Two threshold is low.  "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work . . . .  [T]he severity regulation is to do no more than allow the Secretary to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working."  SSR 85-28, at *2 (internal quotations omitted).  The Ninth Circuit describes Step Two as a "*de minimus* screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290.  *See also Webb v. Barnhart*, 433 F.3d 683, 686-88 (9th Cir. 2005).  "Great care should be exercised in applying the not severe impairment concept."  SSR 85-28, at *4.

Here the record does not reflect any diagnoses of pain-causing mental impairments or any other mental impairment before Plaintiff's date last insured.  In fact, Plaintiff testified she had only recently sought medical care for mental impairments.

Tr. 1205.

On this record, the Court concludes the ALJ did not err when he did not find Plaintiff had pain-causing mental impairments at Step Two because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**II.  The ALJ's evaluation of Dr. Rogosin's opinion.**

Plaintiff contends the ALJ erred when he failed to address all of the limitations assessed by Dr. Rogosin, one of Plaintiff's treating physicians.

An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas*, 278 F.3d at 957 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester v. Chater*, 81 F.3d 821, 830-32.

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Id.* at 831.  When

11  -  OPINION AND ORDER

a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so.  *See, e.g.*, *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Id.* at 600.

Dr. Rogosin treated Plaintiff from October 21, 1998, to August 27, 2001.  Tr. 171, 319.  On June 1, 2001, Dr. Rogosin wrote a letter to Plaintiff's counsel in which he stated Plaintiff suffers from arteriosclerotic heart disease, diabetes mellitus type two with peripheral neuropathy, elevated cholesterol, hypertension, esophageal inflammation, and a history of epicondylitis.  Tr. 123-24.  Dr. Rogosin opined these conditions would make it "difficult" for Plaintiff to work because she is precluded from performing any strenuous activity with her upper extremities.  Tr. 124.  Dr. Rogosin also stated Plaintiff cannot bend or stoop, particularly after eating. Tr. 124.

Plaintiff contends the ALJ improperly rejected Dr. Rogosin's opinion as to Plaintiff's limitations when he failed to include those limitations in Plaintiff's RFC without setting forth legally sufficient reasons for doing so.

As noted, the ALJ found Plaintiff has the RFC to perform a

12  -  OPINION AND ORDER

full range of sedentary work.  Tr. 24.  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. § 404.1567(a).  Dr. Rogosin, however, found Plaintiff is unable to bend or stoop in addition to being precluded from strenuous upper extremity activities.  Tr. 124. Bending and stooping are nonexertional limitations that can prevent a claimant from performing a full range of sedentary work.  20 C.F.R. § 404.1569a(a).  *See also* SSR 96-9p, at *3. Accordingly, the ALJ's RFC is not consistent with the limitations assessed by Dr. Rogosin.

On this record, the Court concludes the ALJ erred when he failed to include in his assessment of Plaintiff's RFC all of the limitations assessed by Dr. Rogosin without providing legally sufficient reasons supported by substantial evidence in the record for doing so.

**III. The ALJ's evaluation of F.N.P. Evers's opinion.**

Plaintiff contends the ALJ erred when he rejected the opinion of F.N.P. Evers, one of Plaintiff's treating medical providers.

Medical sources are divided into two categories: "acceptable" and "not acceptable."  20 C.F.R. § 404.1502. Acceptable medical sources include licensed physicians and psychologists.  20 C.F.R. § 404.1502.  Medical sources classified

as "not acceptable" include, but are not limited to, nurse
practitioners, therapists, licensed clinical social workers, and
chiropractors.  SSR 06-03p, at *2.  The Social Security
Administration notes:

> With the growth of managed health care in
> recent years and the emphasis on containing
> medical costs, medical sources who are not
> acceptable medical sources, such as nurse
> practitioners, physician assistants, and
> licensed clinical social workers, have
> increasingly assumed a greater percentage of
> the treatment and evaluation functions
> previously handled primarily by physicians
> and psychologists.  Opinions from these
> medical sources, who are not technically
> deemed acceptable medical sources under our
> rules, are important and should be evaluated
> on key issues such as impairment severity and
> functional effects, along with the other
> relevant evidence in the file.

SSR 06-03p, at *3.  Factors the ALJ should consider when
determining the weight to give an opinion from those "important"
sources include:  the length of time the source has known the
claimant and the number of times and frequency that the source
has seen the claimant; the consistency of the source's opinion
with other evidence in the record; the relevance of the source's
opinion; the quality of the source's explanation of his opinion;
and the source's training and expertise.  SSR 06-03p, at *4.  On
the basis of the particular facts and the above factors, the ALJ
may assign a not-acceptable medical source either greater or
lesser weight than that of an acceptable medical source.
SSR 06-03p, at *5-*6.  The ALJ, however, must explain the weight

14  -  OPINION AND ORDER

assigned to such sources to the extent that a claimant or
subsequent reviewer may follow the ALJ's reasoning.  SSR 06-03p,
at *6.

F.N.P. Evers treated Plaintiff from approximately
August 2004 to April 2005.  Tr. 412-13.  On October 7, 2005,
F.N.P. Evers wrote an open letter in which he stated Plaintiff
suffers from type-two diabetes with peripheral neuropathy,
hypertension, asthma, hyperlipidemia, depression, bilateral
lower-extremity pain, hyperesthesia, and mechanical lower-back
pain.  Tr. 131.  F.N.P. Evers also noted Plaintiff has restless-
leg syndrome, chronic fatigue, fibromyalgia, Vitamin B12
deficiency, coronary artery disease, degenerative disk disease of
the lumbar spine, lateral femoral cutaneous nerve syndrome, and
mild cardiomegaly.  Tr. 131.  In addition, F.N.P. Evers stated
Plaintiff had recently been diagnosed with chronic and
unexplained midepigastric pain.  Tr. 131.

F.N.P. Evers completed an undated questionnaire at the
request of Plaintiff's counsel in which he stated Plaintiff
suffers from peripheral neuropathy, degenerative joint disease of
the knees, degenerative disc disease, chronic dizziness, chronic
fatigue, left shoulder pain, mechanical lower-back pain, type-two
diabetes, hypertension, asthma, and coronary artery disease.
Tr. 263.  In the questionnaire, F.N.P. Evers stated Plaintiff's
impairments cause daily symptoms of back pain, lower extremity

numbness and pain, and left shoulder pain.  Tr. 264.

F.N.P. Evers concluded Plaintiff can sit for four hours in an

eight-hour workday and stand or walk for one hour in an

eight-hour workday.  Tr. 265.

The ALJ rejected the opinion of F.N.P. Evers on the basis

that F.N.P. Evers, a nurse practitioner, is not an acceptable

medical source under 20 C.F.R. § 404.1502.  As noted, however,

the opinions of not-acceptable medical sources as to the severity

of a claimant's impairments are important, and the ALJ was

required to consider the factors set out in SSR 06-03p when

weighing F.N.P. Evers's opinion.  The ALJ did not do so.

The ALJ also rejected the opinion of F.N.P. Evers on the

basis that F.N.P. Evers evaluated Plaintiff after her date last

insured.  Tr. 27.  The Ninth Circuit has stated, however, that

medical opinions of physicians who began treating a claimant

after her date last insured "'should not be disregarded solely on

that basis.'"  *Wakefield v. Astrue*, 267 Fed. Appx. 682, 683 (9th

Cir. 2008)(quoting *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir.

1988)).

On this record, the Court concludes the ALJ erred when he

rejected the opinion of F.N.P. Evers because the ALJ did not

provide legally sufficient reasons supported by substantial

evidence in the record for doing so.

16  -  OPINION AND ORDER

**IV.  The ALJ's evaluation of Plaintiff's testimony.**

Plaintiff contends the ALJ erred when he found her testimony was not entirely credible.

In *Cotton v. Bowen,* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834).

The ALJ found Plaintiff has the severe impairments of

17  -  OPINION AND ORDER

coronary artery disease, diabetes, obesity, and mild degenerative
disc disease.  Tr. 27.  The ALJ also acknowledged these
impairments could be expected to cause some symptoms.  Tr. 23.
In addition, at the February 8, 2007, hearing, ME Paul Grodan,
M.D., testified Plaintiff suffers from coronary disease, type-two
diabetes with sensory neuropathy, obesity, tobacco abuse, and
moderate impingement of her secal sac at L5-S1 without any nerve-
root impingement.  Tr. 1216.  Accordingly, the Court finds
Plaintiff has satisfied the first two prongs of the Cotton test
by providing evidence of impairments that could reasonably cause
her to produce some degree of symptom.  799 F.2d at 1407.
Because the ALJ did not determine Plaintiff is malingering, the
ALJ must provide clear and convincing reasons for rejecting
Plaintiff's testimony.  Lester, 81 F.3d at 834.

        At the December 20, 2006, hearing, Plaintiff testified she
had difficulties sitting, walking, and standing for extended
periods because of back and leg pain before her date last
insured.  Tr. 1200.  She stated she would sit down or lie down
for approximately 15 minutes to alleviate the pain.  Tr. 1204.
Plaintiff also testified she had difficulties with lifting and
grasping before her date last insured.  Tr. 1200.  The ALJ
rejected Plaintiff's testimony on the ground that, among other
things, it is inconsistent with Plaintiff's activities of daily
living.  Tr. 26.

"The Social Security Act does not require that claimants be
utterly incapacitated to be eligible for benefits." *Fair*, 885
F.2d at 603.  Activities of daily living, nevertheless, may serve
to discredit testimony regarding a claimant's symptoms if the ALJ
"makes a specific finding of fact" that the claimant "is able to
spend a substantial part of [her] day engaged in pursuits
involving the performance of physical functions that are
transferable to a work setting." *Id*.  The ALJ noted Plaintiff
had reported to Dr. Rogosin on October 21, 1998, that she had
recently joined a gym and was trying to exercise; on May 18,
2000, that she was walking daily; on June 27, 2000, that she was
walking and swimming; and on February 5, 2001, that she was doing
"a lot of housekeeping."  Tr. 219, 653, 663, 644.  The record,
however, does not reflect the duration or frequency that
Plaintiff performed these activities nor did the ALJ make any
findings of fact as to whether these activities are transferable
to a work setting or whether Plaintiff was able to spend a
substantial part of her day participating in them.

The ALJ also rejected Plaintiff's testimony on the basis
that Plaintiff only underwent conservative treatment for her
impairments before her date last insured; for example, she did
not go to a neurosurgeon, pain clinic, or physical therapist
prior to her date last insured.  Tr. 26.  "Evidence of
conservative treatment is sufficient to discount a claimant's

19  -  OPINION AND ORDER

testimony regarding severity of an impairment." *Parra*, 481 F.3d
at 751 (internal quotation omitted).  The record, however,
reflects Dr. Rogosin referred Plaintiff to physical therapy,
which she received in February 2001.  Tr. 178.  Plaintiff also
went to the Oregon Health Sciences University Pain Management
Clinic where she was examined by Brett R. Stacey, M.D., and
Meenakshi Dogra, M.D., on May 17, 2002, concerning chronic pain
in her right leg and foot.  Tr. 622-26.  Dr. Stacey performed a
right-lateral femoral cutaneous nerve block on Plaintiff.
Tr. 625-26.  In addition, Plaintiff went to Jerry L. Hubbard,
M.D., a neurosurgeon, who noted an isolated right L5 radicu-
lopathy with the possibility of peripheral neuropathy on May 24,
2001.  Tr. 1065.

The ALJ, relying on the opinion of the ME, also rejected
Plaintiff's allegations of pain and fatigue on the basis that the
medical record for the period before her date last insured does
not establish that she had a condition likely to cause disabling
pain or fatigue.  Tr. 27.  In particular, the ALJ noted there was
not any evidence of peripheral neuropathy in the record.  Tr. 25.

An ALJ may reject a claimant's testimony if it is
inconsistent with the medical record as long as the ALJ makes
"'specific findings justifying a decision to disbelieve an
allegation . . . and those findings are supported by substantial
evidence in the record.'" *Morgan v. Comm'r*, 169 F.3d 595, 600

(9th Cir. 1999)(quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989)).  As noted, however, the record reflects Plaintiff's treating physicians referred her to a physical therapist, a neurologist, and a pain clinic for treatment of her pain symptoms.  Tr. 178, 622-26, 1065.  Moreover, contrary to the ALJ's finding, Dr. Rogosin diagnosed Plaintiff with peripheral neuropathy.  Tr. 123-24, 215.  The record before Plaintiff's date last insured also reflects other occurrences of back difficulties.  For example, on April 16, 2001, Sean Stack, M.D., noted a focal posterior central-disc protrusion at L5-S1 that was producing mild compression on the traversing S1 nerve roots bilaterally.  Tr. 576.  On May 24, 2001, Jerry L. Hubbard, M.D., noted an isolated right L5 radiculopathy with the possibility of peripheral neuropathy. Tr. 1065.  In addition, on January 25, 2002, Philip W. Anderson, M.D., noted a herniated C6-7 disc into the ventral right spine canal contacting the ventral surface of Plaintiff's spinal cord and likely compromising the right C7 neural foramen.  Tr. 617.

On this record, the Court concludes the ALJ erred when he rejected Plaintiff's testimony because the ALJ did not provide legally sufficient reasons supported by substantial evidence in the record for doing so.

**V.    The ALJ's finding at Step Five that Plaintiff was a "younger individual" as of her date last insured.**

Plaintiff contends the ALJ erred when he found Plaintiff was

a "younger individual" under the Medical-Vocational Guidelines as of her date last insured.  Plaintiff, therefore, requests this Court to credit her testimony as true and to remand this matter for an immediate award of benefits.

As noted, pursuant to the Medical-Vocational Guidelines, "[t]he term younger individual is used to denote an individual age 18 through 49."  20 C.F.R. part 404, subpart P, appendix 2 § 201.00(h)(1).  Plaintiff's date of birth is September 21, 1952.  Tr. 74.  As noted, her date last insured is December 31, 2002.  Tr. 22.  Plaintiff, therefore, was 50 years old as of her date last insured.  Thus, Plaintiff was not at the time of her date last insured a "younger individual" as defined under the Medical-Vocational Guidelines, but an individual "approaching advanced age."  *Id.* at § 201.00(g).  Under the Medical-Vocational Guidelines, an individual "approaching advanced age" may be disabled as a matter of law depending on factors such as whether she is restricted to sedentary-level work or has transferrable skills.  *See* SSR 96-9p.

On this record, the Court concludes the ALJ erred when he found Plaintiff was a "younger individual" under the Medical-Vocational Guidelines at Step Five and did not address the factors necessary to determine whether Plaintiff is disabled as a matter of law because of her classification under the Medical-Vocational Guidelines.

**REMAND**

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). When "the record has been fully developed and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

Generally the decision whether to remand a case for further proceedings or for the payment of benefits is within the discretion of the Court. *Harman*, 211 F.3d at 1178. The Ninth Circuit, however, has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Id.* The Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting . . .
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

Here the Court has concluded the ALJ erred when he

23  -  OPINION AND ORDER

(1) rejected the opinion of Dr. Rogosin, Plaintiff's treating physician, (2) rejected the opinion of treating medical source F.N.P. Evers, (3) rejected Plaintiff's testimony, and (4) found at Step Five that Plaintiff was a "younger individual" under the Medical-Vocational Guidelines.

As noted, when the ALJ fails to provide legally sufficient reasons for rejecting a claimant's subjective pain testimony, that testimony is to be credited as a matter of law if "there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited." *Vasquez v. Astrue*, 572 F.3d 586 (9th Cir. 2009). Here, however, several outstanding issues remain. For example, it is not clear that Plaintiff would be deemed disabled if her testimony were credited as true because neither the ALJ nor Plaintiff's attorney posed a hypothetical to the VE that included the limitations alleged by Plaintiff. The ALJ also improperly rejected the opinion of Dr. Rogosin, Plaintiff's treating physician, who opined Plaintiff had at least some limitations on account of her disability as of her date last insured. It is not clear, however, whether the limitations assessed by Dr. Rogosin would result in a finding of disability. In addition, the ALJ incorrectly found Plaintiff was a "younger individual," which is

relevant to the ALJ's findings at Steps Four and Five as discussed above. *See* SSR 96-9p (an individual approaching advanced age may be disabled under the Medical-Vocational Guidelines as a matter of law depending on factors such as whether she is restricted to sedendary-level work or has transferrable skills).

Accordingly, the Court finds "outstanding issues" remain "that must be resolved before a proper disability determination can be made." The Court concludes on this record, therefore, that remand of this matter for further administrative proceedings is necessary.

<u>CONCLUSION</u>

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 18th day of August, 2009.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge


25  -  OPINION AND ORDER

26  -  OPINION AND ORDER